1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

STATE OF WASHINGTON, et al.,

           Plaintiffs,

  v.

THE UNITED STATES OF AMERICA;
DONALD TRUMP, in his official capacity
as President of the United States of America,
et al.,

           Defendants.

NO. 2:18-cv-00939-MJP

STATES' MOTION FOR EXPEDITED
DISCOVERY AND REGULAR STATUS
CONFERENCES

NOTING DATE: JULY 13, 2018

**ORAL ARGUMENT REQUESTED**

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

i

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

## I. INTRODUCTION AND RELIEF REQUESTED

2

3

Seventeen states and the District of Columbia[1] (collectively, the States) filed this lawsuit

4

to protect themselves and their residents from the Trump Administration's policy of forcibly

5

separating families who enter the country along its Southwestern border and related illegal

6

practices. Among other relief, the States seek an order that 1) enjoins the federal government

7

from refusing to process asylum seekers who arrive at Southwestern border ports of entry;

8

2) declares family separation for deterrence illegal; 3) requires prompt family reunification for

9

those already separated; 4) prevents immigration officials from predicating familial reunification

10

on the withdrawal of asylum claims, acquiescence to removal, payment of the costs of

11

reunification, or other conditions unrelated to the safety of the child; and 5) confirms that the

12

indefinite detention of families by the federal government is illegal.

13

14

Most Plaintiff States know that separated parents[2] or children[3] have been relocated within

15

their borders—but several States have been unable to speak with them.[4] The States have

16

17

18

[1] Specifically, the States of Washington, California, Maryland, Oregon, New Mexico, New Jersey, New York, Iowa, Illinois, Minnesota, Rhode Island, Vermont, North Carolina, and Delaware; the Commonwealths of Massachusetts, Pennsylvania, and Virginia; and the District of Columbia.

19

20

21

22

[2] As of the date of this motion, the Department of Homeland Security (DHS) is detaining separated parents in Plaintiff States Washington, Oregon, California, New Jersey, Maryland, and New Mexico. Complaint ¶¶ 300-03, 307, 312-13, 319, 336, 315-16; Decls. of Blumenauer ¶ 6 (Ex. 25); Jayapal ¶¶ 8, 10 (Ex.26); Perhot ¶ 9 (Ex. 27); Ruppersberger ¶ 11 (Ex. 35). Other Plaintiff States have or anticipate receiving separated parents released from DHS facilities. *E.g.*, Decls. of W.R. ¶ 38 (Ex. 21); Roberts-Henry ¶ 11 (Ex. 24); Serrano ¶ 15 (Ex. 36).

23

24

25

[3] As of June 25, 2018, the Office of Refugee Resettlement (ORR) admits it has placed over 500 separated children in at least nine Plaintiff States. *See* Clinton Ex. D. In addition to those states that Defendants acknowledge have received traumatized children, the Plaintiff States of Massachusetts, Minnesota, and the District of Columbia have confirmed that they, too, have received separated children. Compl. ¶¶ 306, 323-35, 341; Decl. of Perhot ¶¶ 10-11 (Ex. 27).

26

[4] The facilities in Oregon and California have not provided access to speak with individuals detained there. *See* Austria Decl. ¶¶ 3-10 (Ex. 37); Compl. ¶¶ 312; *cf.* Clinton Decl. Ex. E.

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

1

1  repeatedly demanded basic information about their well-being, but were answered with silence.

2  Clinton Decl. Exs. A, B, C.  These families are among the primary witnesses to the Defendants'

3  misconduct.  They also are largely at the Defendants' mercy, as they can move detainees without

4  notice, a practice that the States have already encountered.  Poletti Decl. ¶¶ 34-38 (Ex. 2).

5

6      Hours after the States filed this lawsuit, the District Court for the Southern District of

7  California issued a preliminary injunction on behalf of a national class of parents, ordering the

8  federal government to promote family contact and setting deadlines for family reunification.

9  *Ms. L v. U.S. Immigration & Customs Enf't*, No. 18CV0428 DMS (MDD), 2018 WL 3129486

10  (S.D. Cal. June 26, 2018) (*Ms. L* Order).  While the States agree that emergency relief for these

11  families is necessary, the *Ms. L* Order further increases the risk that Defendants will move

12  parents and children before their testimony can be taken.  Moreover, the States have claims and

13  interests that extend beyond the relief granted by the *Ms. L* Order.[5]  It does not address

14  Defendants' refusal to accept asylum seekers at Southwestern ports of entry, the conditions that

15  they are attaching to reunification (e.g., withdrawal of asylum claims or payment of travel costs

16  for ORR employees and separated children to be reunited with the parent), or their alternative

17  proposals to indefinitely detain families at unlicensed locations or summarily deport them.

18

19      Pursuant to Local Rules 7(d)(2), 16 and 26(d)(1), the States seek expedited discovery to

20  obtain and preserve evidence concerning the government's family separation policy and its

21  related practices.[6]  *See* **Appendix A** (detailing specific topics for discovery).  This relief is

22

23

24  [5] The broad and varied harms that the family separation policy inflicts on the States and their residents are documented through the exhibits to the Complaint, as well as the 99 declarations filed concurrently herewith.  An index of those declarations is provided as **Appendix B** to this Motion.

25  [6] The States note this Motion as a Second Friday motion pursuant to LCR 7(d)(2)(A) because it requests relief from the standard case scheduling deadlines provided by FRCP 16(b)(2) and LCR 16.

26

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

necessary because Defendants exercise control over the primary witnesses to their misconduct, they constantly change position, and they have already caused deep and enduring harm. The States have attempted to confer with Defendants but have been unable to reach agreement.[7]

## II.    PERTINENT FACTS

This spring, Defendants implemented a long-threatened policy of forcibly separating parents from their children when they enter our country through the Southwestern border, a policy expressly intended to terrify families and deter future immigrants from entering the United States. *See, e.g.*, Compl. ¶¶ 53, 55, 65, 67, 119.  At the same time, Defendants have accelerated their practice of turning away asylum seekers, including families with small children, who present themselves at Southwestern ports of entry—a practice that encourages unlawful entry and thus artificially increases such violations.  *Id*. ¶ 58; *see also* Decls. of Mensing ¶ 4(c) (Ex. 22); Levy ¶¶ 20-38, 43-45 (Ex. 1); Ramos ¶¶ 59-60 (Ex. 3).  Recent reports confirm that Defendants are now using separated children to coerce parents to withdraw asylum claims or agree to deportation in order to expedite reunification.  *Id*. ¶¶ 100-102 (Exs. 37-38); *see also* Decls. of Blumenauer ¶ 23 (Ex. 25); Griffith ¶ 12 (Ex. 29) (concern re long separation).  Despite the *Ms. L* Order requiring them to reunify families, Defendants are conditioning reunification on onerous logistical and financial terms (such as the payment of travel costs for the child and government escorts) many parents cannot hope to satisfy.  Decls. of Levy ¶¶ 46-51(Ex.1); Ramos ¶ 62 (Ex. 3); Greenberg (Ex. 43).[8]

---

[7] *See* Certificate of Compliance (C. Melody), ¶¶ 1-3 & Ex. 1, filed herewith.

[8] *See also* Decls. of Mensing ¶ 7d (Ex. 22); Serrano ¶¶ 9-14 (Ex. 36); W.R. ¶¶ 41-51 (Ex. 21); Caceres  ¶¶ 13-14, 17-18 (Ex. 4); Greenberg ¶ 13 (Ex. 43); Gonzalez-Garcia ¶¶ 25-30 (Ex. 6); Jose Francisco ¶ 7 (Ex. 39); Fanjoy (Ex. 40); Roberts Henry ¶ 10 (Ex. 24).

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Unless required to protect a child's safety, forced separation is known to cause immediate and extreme psychological harm to both children and their parents, and the resulting cognitive and emotional damage can be permanent.  Compl. Exs. 43, 79-86.[9]  The longer the separation lasts, the worse the damage will be.  Brown Decl. ¶ 19 (Ex. 57).  To date, Defendants admit that they have forcibly separated over 2,500 children from their parents, with over 2,000 still detained.  *See* Compl. ¶¶ 70-71; Clinton Decl. Ex. F.  Many professionals who have interviewed or worked with the separated parents and children in recent weeks have witnessed the impacts firsthand, and the States' interviews of detainees in their jurisdictions confirm extensive harms, especially where parents and children have not been allowed to contact each other.[10]  These interviews also reflect the deplorable conditions of detention, including "iceboxes;" cages; lack of food, clean water, and sanitation; deprivation of comfort for small children; and threats that children will be jailed or permanently kept from their families.[11]  The dozens of personal

---

[9] Decls. of Brown ¶¶ 19-23, 28-32 (Ex. 57); Houshyar ¶¶ 4, 6-10, 13-15 (Ex. 51); Torlakson ¶ 14 (Ex. 68); Escudero ¶ 8-10 (Ex. 60); Sheppard ¶¶ 7-8 (Ex. 52); Alvarez ¶¶ 3-11 (Ex. 53); Borque ¶ 7-9, 14 (Ex. 73); Korte ¶ 8 (Ex. 75); Zucker ¶ 34-50 (Ex. 79); Bradbury ¶¶ 7-13 (Ex. 60); Aronson ¶¶ 5, 11 (Ex. 41); Gallegos ¶¶ 5-7(Ex. 54); Castillo ¶ 5-7 (Ex.55); Martinez (Ex. 56).

[10] Decls. of Caceres (Ex. 4); Tapia (Ex. 5); Gonzalez-Garcia (Ex. 6); Oliva & Jimenez (Ex. 7); CCB (Ex. 8); G. Doe (Ex. 9); L. Doe (Ex. 10); Paz Rodriguez (Ex. 11); Arriaga-Pineda (Ex. 12); Garcia Castillo (Ex. 13); Aguirre Vega (Ex. 14); Monroy-Guerra de Tesucum (Ex. 15); Dubon Mejia (Ex. 16); Batres (Ex. 17); Sanchez Rodriguez (Ex. 18); Flores-Oliva (Ex. 19); Padilla-Orellana (Ex. 20); W.R. (Ex. 21); *see also* Decls. of Poletti (Ex. 2); Mensing (Ex. 22); Langarica (Ex. 23); Roberts Henry (Ex. 24); Blumenauer (Ex. 25); Jayapal (Ex. 26); Perhot (Ex. 27); Griffith (Ex. 29); Mostofi (Ex. 30); Gilmore (Ex. 31); D. Beyer (Ex. 32); Bellor (Ex. 33); Podkul (Ex. 34); Ruppersberger (Ex. 35); *and* Decls. of Jose Francisco (Ex. 39); Fanjoy (Ex. 40); Serrano (Ex. 36).

[11] Decls. of Poletti (Ex. 2); Houshyar ¶¶ 5, 11-12 (Ex. 51); Roberts Henry Ex. 2 (Ex. 24); Aguirre Vega (Ex. 14); Paz Rodriguez (Ex. 11); Arriaga-Pineda ¶ 2 (Ex. 12); Dubon Mejia (Ex. 16); Batres ¶¶ 1, 3, 6 (Ex. 17); Monroy-Guerra ¶¶ 5-7, 11 (Ex. 15); Sanchez Rodriguez ¶¶ 4,9, 12 (Ex. 18); Flores-Oliva ¶ 2-4 (Ex. 19); Padilla-Orellana ¶¶ 4-5, 9-15 (Ex. 20); Gonzalez-Garcia ¶ 10 (Ex. 6); Oliva & Jimemez ¶¶ 7-11, 17-23 (Ex. 7); W. R. ¶¶ 19-22, 27, 29, 33 (Ex.21); Ruppersberger ¶ 7 (Ex. 35); L. Doe ¶ 8 (Ex. 10); G. Doe ¶ 9 (Ex. 9); Blumenauer ¶¶ 12, 18-19 (Ex. 25); Jayapal ¶¶ 17-19 (Ex. 26); CCB ¶ 2, 4-5 (Ex. 8); *see also* Leckman (Ex. 50).

---

4

accounts that the States have already obtained confirm the terror that this policy has inflicted on innocent children and their desperate parents. Defendants' policies are causing fear and disruption in the States' immigrant communities, both because they target Latino populations and because they harken back to some of the most destructive chapters in our history.[12] The ineffective policy has been condemned nearly universally. Compl. Exs. 77-87; Decl. of Wong (Ex. 42).

On June 20, 2018, President Trump signed an Executive Order (EO) purporting to suspend family separation. Compl. Ex. 24. But the EO does not actually require an end to family separation, and in fact, it makes family unity contingent on the "availability of appropriations" and exemptions from the requirements of the "*Flores* Settlement," a 1997 agreement that protects immigrant youth from indefinite detention. Compl. Ex. 30. Further, the EO appears limited to those families who do not seek to stay in the United States. The EO does not moot any of the States' claims: there is no indication that funding will be appropriated, that appropriate federal facilities exist and are available, or that the creation of new family internment facilities is feasible or legal. Clinton Decl. Ex. G; Compl. Ex. 34.

Indeed, Defendants admit that "it is not possible for the U.S. government to detain families together during the pendency of their immigration proceedings" without modifying the provisions in the *Flores* Settlement that require expeditious release of detained minors and use of non-secure facilities licensed by the state. Compl. Ex. 31 at 3. While Defendants seek to eliminate these protections for children and remove their facilities from outside scrutiny (*id*. at

---

[12] Decls. of Roche (Ex. 58); Matos (Ex. 62); Torrijos (Ex. 63); Briggs (Ex. 48); Jones (Ex. 49) Kimoto (Ex. 45); Banko (Ex. 46); Margles (Ex. 47).

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

5

19), the *Flores* court has already rejected similar attempts.[13]  Further, DHS has explained that reunification efforts are only for "adults who are subject to removal" to reunite families solely "for the purposes of removal," i.e., not those seeking to remain in the country. Compl. 1. Ex. 35.

Defendants acknowledge that they intend to switch to a policy of indefinite family detention or, alternatively, to resume family separations in the near future because of the constraints provided by *Flores* and limited federal resources.  For example, CBP Commissioner Kevin McAleenan recently announced that he is unable to refer parents for prosecution without separating them from their children due to lack of resources, but that situation is reportedly temporary.  Clinton Decl. Ex. H.  White House Press Secretary Sarah Huckabee Sanders has emphasized that the EO purporting to halt family separations "is a temporary solution. This isn't going to last . . . This will only last a short amount of time, because we're going to run out of space, we're going to run out of resources to keep people together."  Secretary Sanders reiterated: "We're not changing the policy. We're simply out of resources."  Clinton Decl. Ex. I.

Meanwhile, President Trump recently proposed simply deporting immigrants without any legal process.  Clinton Decl. Ex. J; Compl. Ex. 41.  And Attorney General Sessions continues to publicly adhere to the "zero-tolerance" directive requiring criminal prosecution of all migrants who cross the Southwestern border outside a port of entry.  Clinton Decl. Ex. H.

---

[13] The government's argument that the *Flores* Settlement Agreement's licensure requirement does not apply to ICE family residential facilities (*see* Compl. Ex. 31 at 4) is a direct attack on the States' sovereign interest in licensing, inspecting, and monitoring all out-of-home care providers (i.e., providers who care for children away from their parents), including federally funded ones.  To ensure that all facilities where children are placed out of the care of their parents meet minimum safety standards, the States have comprehensive laws and regulations that require, *inter alia*, current licensing, periodic monitoring, meetings with staff and children, background checks, facility safety standards, and provision of necessary and appropriate care to the children.  Decls. of Reeves (Ex. 66); Chen (Ex. 65); Culley (Ex. 61); Ford (Ex. 28); Guinn (Ex. 64); Velez (Ex. 38).

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

6

The federal government has ignored the States' repeated requests for information about separated families.  For example, on June 7, 2018 and again on June 18, 2018, Washington State Governor Jay Inslee and Attorney General Bob Ferguson requested information about separated children and parents; plans and timing for release or reunification; pending asylum claims; and their access to legal information and attorneys.  *Id.* Exs. A & B.  Similarly, on June 19, 2018, 21 states and the District of Columbia sent a letter expressing concern about Defendants' family separation policy.  *Id.* Ex. C.  Federal lawmakers have sent similar letters.  *Id.* Exs. K, L, M; Compl. Exs. 7, 45.  These requests were ignored.

The States have also attempted to interview potential witnesses over whom Defendants have custody and control and the federal government has delayed or obstructed some of those efforts.[14]  As a result, the States are forced to rely in part on media reports about the government's shifting conduct, as well as vacillating public statements from the Administration.[15]  Indeed, in granting preliminary relief, the *Ms. L.* Court expressed dismay that the government had not adequately tracked separated children and their parents, facilitated communication between them, or planned for reunification, noting that it accounted for *property* better than it accounted for the children it had taken from their parents. *Ms. L*, 2018 WL 3129486 *7.

Meanwhile, the States and their residents continue to suffer harm from family separation and related practices—including the severe harms described above—even after the issuance of the preliminary injunction.  For example, reports are emerging that some separated parents who

[14] Poletti Decl. ¶ 34-38 (Ex. 2); *see also* Austria Decl. ¶¶ 3-10 (Ex. 37); Compl. ¶ 312.

[15] For example, the description of a father detained at the Sheridan Prison in Oregon who was separated from his 15-day-old child (Compl. ¶ 307) was taken from published news sources —not the Mexican Consulate.  *See* http://katu.com/news/local/vigil-scheduled-outside-sheridan-prison-for-123-undocumented-immigrants-detained-by-ice. Plaintiffs are informed that the infant is with his mother.

1
2
3
4
5
6
7
8
9
10
11
12
13
14

hoped to be quickly reunited with their children are being told that they must first complete a host of burdensome paperwork never intended for this purpose,[16] or worse, voluntarily agree to deportation, effectively placing enormous pressure on parents to abandon asylum claims and withdraw their children's claims in order to be reunited.  Compl. Exs. 36-38.  The Policy also continues to adversely affect the States' sovereign, quasi-sovereign and proprietary interests.  Through their application for relief from the protections of the *Flores* Settlement, Defendants seek to invade the States' right to regulate the facilities where children are being housed, undermining the protections intended to ensure humane and safe treatment for children.[17] Defendants' conduct forces the States to expend resources to remediate the harms inflicted by the Policy, many of which are likely to be permanent.  State programs, including child welfare services, social and health services, courts, and public schools, are all experiencing fiscal impacts due to family separation that will only increase. *Id*. § K.[18]

15

### III.     AUTHORITY AND ARGUMENT

16
17
18
19

This Court has discretion under Rule 26(d) to allow the States to take the expedited discovery and to order the weekly status conferences they request.  Courts typically require "good cause" to deviate from the standard pretrial schedule, a standard easily satisfied here.

20

[16] Greenberg Decl. (Ex. 43); Levy Decl. ¶¶ 46-51 (Ex.1).

21

[17] Decls. of Reeves (Ex. 66); Chen (Ex.65); Culley (Ex. 61); Ford (Ex. 28); Guinn (Ex. 64); Velez (Ex. 38).

22
23
24
25
26

[18] Decls. of Torlakson (Ex. 68); Cantwell (Ex. 69); Lee (Ex. 70); Ruiz (Ex. 71); Escudero  (Ex. 60); Manning (Ex.72); Bourque (Ex. 73); Tahiliani (Ex. 74); Perhot (Ex. 27); Korte (Ex. 75); Possin (Ex. 76); Zimmerman (Ex. 77); Zucker (Ex. 79); Cechnicki (Ex. 80); Bradbury (Ex. 60); Katz (Ex. 81); Guinn (Ex. 64); Aronson (Ex. 41); Mostofi (Ex.30); Velez (Ex. 38); Gilmore (Ex. 31); Allen (Ex. 82); Nazarov (Ex. 83); Bates (Ex. 84); Gonzalez (Ex. 85); Lane (Ex. 86); Bouchey (Ex. 87); Schatz (Ex. 88); Schilling (Ex. 89); Allison (Ex. 90); Fourre (Ex. 91); Happold (Ex. 92); Meierbachtol (Ex. 93); Yanagida (Ex. 94); Curtatone & Skipper (Ex. 67); Weiss (Ex. 96); Lennox (Ex. 44); Perry-Manning (Ex. 97); C. Beyer (Ex. 78); Sinski (Ex. 98); Aranowski (95); Peterson (Ex. 99).

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*Music Grp. Macao Commercial Offshore Ltd. v. John Does I-IX*, 2014 WL 11010724, at \*1 (W.D. Wash. 2014) (collecting cases).  A request for expedited discovery is evaluated in light of "the reasonableness of the request in light of all the surrounding circumstances." *Semitool, Inc. v. Tokyo Electron Am. Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002) (internal quotations and emphasis removed); *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009).

" 'Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.' " *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (quoting *Semitool*, 208 F.R.D. at 276).  Need outweighs potential prejudice in cases where physical evidence may be moved or difficult to track with the passage of time, thereby disadvantaging one or more parties to the litigation.  *Cf. Pod-Ners, LLC v. N. Feed & Bean of Lucerne Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (anticipated movement of field beans made ordinary discovery "unusually difficult or impossible.").  Indeed, if a party's movement of beans is sufficient for expedited discovery, surely the movement of human beings must be.  *Cf. id.* at 676.

Here, numerous factors support the States' request.  Expedited discovery is needed to enable the States to obtain evidence and testimony from people over whom the Defendants have control, to determine the extent of the harm inflicted on State programs and residents, and to evaluate the need for interim emergency relief.  The States also need to obtain discovery related to the claims they assert that are not addressed by the *Ms. L* Order: that detained parents and children are or have been subject to inhumane conditions of confinement; that Defendants are improperly refusing to accept applications for asylum at ports of entry; that Defendants are conditioning family reunification on an agreement to abandon an asylum claim or to waive other

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

relief available under the INA; and that Defendants are preparing to house children in unlicensed facilities to evade State standards. Compl. at 119-120.

As noted, Defendants have sole control over key witnesses and evidence, including the separated children and parents located in the Plaintiff States, but they cannot be relied upon to accurately track the location of either. *See Ms. L.* 2018 WL 3129486 *7. Access to these potential witnesses and information about them is critical.[19] Moreover, many of the key witnesses will likely be moved in the coming days and weeks with no assurances as to their well-being or whereabouts, and continued chaos is inevitable. *Id*. at 9 (the government does not have "any affirmative reunification procedure for [separated] parents and children").[20] Nor have the States delayed their requests: literally hundreds of government officials have previously requested similar information to no avail. Defendants have been on notice of these requests for weeks. Clinton Decl. Exs. A, B, C, K, L, M; Compl. Exs. 7, 45. While the States have tried to obtain evidence from these witnesses, they have been frustrated in these efforts. *See* Decl. of Poletti ¶¶ 34-38 (Ex. 2); Austria ¶¶ 3-10 (Ex. 37); Compl. ¶ 312; *cf.* Clinton Ex. E.

Moreover, the scope of the States' requests is appropriate in relation to their purpose and the interests at stake. While the government publically asserts that it has rescinded, at least temporarily, its family separation policy, whether the rescission of an unconstitutional policy is

---

[19] Decls. of Paz Rodriguez (Ex. 11); Arriaga-Pineda (Ex. 12); Garcia Castillo (Ex. 13); Aguirre Vega (Ex. 14); Monroy-Guerra (Ex. 15); Dubon Mejia (Ex. 16); Batres (Ex. 17); Sanchez Rodriguez (Ex. 18); Flores-Oliva (Ex.19); Roberts Henry, Ex. 2 (Ex. 24); Padilla-Orellana (Ex. 20); Caceras (Ex. 4); Gonzalez-Garcia (Ex. 6); Oliva and Jimenez (Ex. 7); W.R. (Ex. 21); L. Doe (Ex. 10); G. Doe (Ex. 9); CCB (Ex. 8).

[20] For example, the Texas Civil Rights Project claims that, for the more than 300 parents it represents, it has located only two children. Clinton Decl. Ex. N; *see also* Clinton Decl. Ex O (report of child walking away from ORR shelter).

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   really a sham has been the proper subject of expedited discovery in at least one case.  *See Citizens*

2   *for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, No. 17-CV-1054-BAS-JMA, 2018

3   WL 1150836, at *2-4 (S.D. Cal. Mar. 5, 2018).  Likewise, discovery directed to the Defendants'

4   recently announced strategies of indefinite family detention—or wholesale deportation without

5   any legal process—are necessary to both support the States' claims and to enable them to seek

6   appropriate emergency relief if warranted.  For example, on Friday, June 30, 2018, the

7   government took the position before the *Flores* court that the *Ms. L* Order exempts them from

8   legal restrictions on indefinite detention.  *See Flores, et al. v. Sessions, et al.*, Case No.

9   CV 85-4544-DMG (C.D. Cal.), Dkt. 447; Clinton Decl. Ex. P.

10        Under the circumstances presented here, "the administration of justice[ ] outweighs the

11  prejudice to the responding party."  *See In re Countrywide*, 542 F. Supp. 2d at 1179

12  (quoting *Semitool* 208 F.R.D. at 276).  The expedited discovery requested is a limited subset of

13  what the States would pursue in discovery regardless.  The only burden is that Defendants must

14  respond sooner, which is trivial compared to the immediate and real harms family separation and

15  related policies are causing.  Further, the Defendants have already been ordered by a federal

16  court to reunify the separated children and parents.  This will require the government to locate,

17  identify, and maintain information about all of the separated children and parents; providing this

18  information to the States adds very little additional burden.

19        Further, any burden to the Defendants also is mitigated by the request for regular

20  conferences with the Court.  Defendants can raise any unforeseen challenge that the requests

21  pose during these status conferences—allowing Defendants to seek immediate relief if the

22  parties are unable to resolve a dispute.  Finally, any logistical difficulty is a "chaotic

STATES' MOTION FOR EXPEDITED
DISCOVERY
NO. 2:18-cv-00939

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   circumstance of the Government's own making." *See Ms. L.* 2018 WL 3129486 *11.  Whatever

2   burden expedited discovery may pose pales in comparison to the States' needs and the

3   administration of justice.  All relevant factors weigh in favor of the States' requests.

4                               **IV.    CONCLUSION**

5

6   The States respectfully request that the Court grant the relief requested.

7   DATED this 2nd day of July, 2018.

8

9                                   ROBERT W. FERGUSON
                                    Attorney General

10

11                                  */s/ Laura K. Clinton*
                                    LAURA K. CLINTON, WSBA #29846
12                                  Assistant Attorney General
                                    REBECCA GLASGOW, WSBA #32886
13                                  Deputy Attorney General
                                    COLLEEN M. MELODY, WSBA #42275
14                                  Division Chief, Civil Rights Unit
                                    NOAH G. PURCELL, WSBA #43492
15                                  Solicitor General
                                    MEGAN D. LIN, WSBA #53716
16                                  Assistant Attorney General
                                    Attorneys for Plaintiff State of Washington
17

18

19

20

21

22

23

24

25

26

STATES' MOTION FOR EXPEDITED                12          ATTORNEY GENERAL OF WASHINGTON
DISCOVERY                                                      800 Fifth Avenue. Suite 2000
NO. 2:18-cv-00939                                               Seattle, WA  98104-3188
                                                                    (206) 464-7744